# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Adrian Palacios-Benitez, | ) |
|     Plaintiff, | ) C.A. No. 2:21-1155-RMG |
| v. | ) |
| Ur Jaddou, Director, United States Citizenship and Immigration Services, | ) **AMENDED ORDER AND OPINION** |
|     Defendant. | ) |

This matter comes before the Court on Plaintiff's motion for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). (Dkt. No. 24). The Court entered an order on January 14, 2022 granting the motion and awarding Plaintiff $9,293.28 in attorney fees and $400.00 in costs. (Dkt. No. 34). Defendant thereafter moved for the Court to reconsider its prior order and to amend certain factual findings. (Dkt. No. 35). These included findings that "USCIS communicated with U.S. Immigration and Customs Enforcement ('ICE') regarding removal proceedings only after Plaintiff filed his complaint" and "the government filed the answer that Plaintiff was ineligible for naturalization when counsel 'knew that was plainly not the case.'" (Dkt. No. 39 at 2). Defendant attached to her motion additional documents, many of which were heavily redacted. (Dkt. Nos. 35, 35-1, 35-2, 35-3). Plaintiff also added additional documents in response to Defendant's motion to reconsider. (Dkt. No. 38-1).

Defendant asserts that she is not asking the Court to reconsider its decision awarding attorney fees but only to amend the above referenced factual findings with a more complete record. (Dkt. No. 39 at 2). Plaintiff opposes the motion to reconsider, asserting that Defendant has failed

1

to satisfy the requirements for relief under Rule 60(b) of the Federal Rules of Civil Procedure. (Dkt. No. 38).

## Defendant's Motion to Reconsider

Any party seeking relief from a judgment under Rule 60(b) must satisfy initially the threshold requirements of timeliness, a meritorious defense, lack of unfair prejudice to the opposing party, and exceptional circumstances. *Dowell v. State Farm Fire & Cas. Auto Ins. Co*., 993 F. 2d 46, 48 (4th Cir. 1993). Once these threshold requirements are satisfied, the moving party must meet one of the six standards under Rule 60(b), which includes a catch all provision of "any other reason that justifies relief."

Defendant's motion is timely and seeks the modest relief of clarifying certain factual findings of the Court without altering the award of attorney fees to Plaintiff. Thus, there is minimal, if any, prejudice to Plaintiff. The additional documents provided by the parties do not alter the Court's finding that the Government's defense was not substantially justified. The Court finds, however, that the need to accurately set forth the factual circumstances present here with the now much fuller record constitutes an exceptional circumstance and justifies the granting of the motion to reconsider. The amended order which follows incorporates the newly produced documents and amends the amount of the attorney fee award to include the additional attorney time incurred by Plaintiff as a result of responding to this Rule 60(b) motion.

## Legal Standard

A litigant in an action against the United States is entitled to an award of attorney fees under EAJA where (1) the litigant is the prevailing party; (2) the Government's position was not substantially justified; (3) no special circumstances make an award unjust; and (4) a petition for a fee award was timely filed and supported by an itemized statement. *Crawford v. Sullivan*, 935

F.2d 655, 656 (4th Cir. 1991). For a litigant to be deemed a "prevailing party," he must obtain a judgment or consent decree on the merits, which grants him *some* relief on the merits and alters the legal relationship between the parties. *Ge v. United States Citizenship and Immigration Services*, 20 F.4th 147, 153 (4th Cir. 2021). The Government's position is "substantially justified" where it had a "reasonable basis both in law and fact" or was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In deciding "substantial justification," the Court must look to the "totality of circumstances" to determine if the Government's litigation stance was substantially justified. *Roanoke River Basin Association v. Hudson*, 991 F.2d 132, 139 (4th Cr. 1993). The Government bears the burden of proving its position was "substantially justified." *Scarborough v. Principi*, 541 U.S. 401 (2004).

**Factual Background**

Plaintiff lawfully entered the United States on September 4, 1991 and acquired permanent residence status. Plaintiff made an application for naturalization in July 2019 and had his naturalization interview in November 2019. At the time of his naturalization interview, United States Citizenship and Immigration Services ("USCIS") was aware that Plaintiff had prior misdemeanor convictions from the 2006-2007 time period involving violation of a domestic violence protective order and assault on a female. Since being a person of "good moral character" is a requirement for naturalization, USCIS sought additional information regarding these convictions. USCIS conducted additional background investigation and exceeded the 120-day period normally required for a determination of naturalization following the naturalization hearing.

The Charleston Field Office staff member assigned Plaintiff's application, Laura Haynie, sought to gather additional information concerning Plaintiff's prior misdemeanor convictions to determine whether they disqualified him for citizenship. Haynie requested additional information

3

from Plaintiff on his prior convictions on August 24, 2020 and received his response on November 10, 2020. (Dkt. No. 35-1 at 3). Haynie then determined that based upon the information contained in his application file and applicable legal standards, Plaintiff "was approvable for naturalization" because his file "no longer contained any good moral character issues during the statutory period." (*Id*. at 4).

Despite the fact that Plaintiff met the requirements for naturalization, USCIS staff decided in December 2020 to make a referral to Immigration and Customs Enforcement ("ICE") for the initiation of removal proceedings against Plaintiff for his prior misdemeanor convictions. USCIS staff then learned that agency policy did not allow the USCIS field office to initiate removal proceedings based on criminal charges. Instead, the USCIS field office staff was required to make a request to another division of USCIS, Fraud Detection and National Security ("FDNS"), for referral of possible removal proceedings to ICE. On March 23, 2021, Haynie sent Plaintiff's file to FDNS for possible referral for removal proceedings to ICE. (*Id*.).

Plaintiff brought this action in the United States District Court on April 19, 2021, asserting that more than 120 days had passed since his naturalization interview and moving to have the District Court assume jurisdiction over the matter pursuant to 8 U.S.C. § 1447(b). At the time Plaintiff filed his lawsuit in District Court, USCIS had made no referral of Plaintiff's file to ICE for initiation of removal proceedings. On April 30, 2021, eleven days after the filing of this lawsuit, an attorney in the USCIS Office of Chief Counsel wrote ICE directly seeking to initiate removal proceedings against Plaintiff on the basis of the past misdemeanor convictions. (Dkt. No. 33-2 at 4). USCIS staff anticipated that if ICE initiated removal proceedings, Plaintiff's "[a]pplication for [n]aturalization would be denied due to being in [removal] proceedings." (Dkt. No. 35-3 at 1). After USCIS attorneys made the referral of Plaintiff's file to ICE for possible

4

removal, USCIS staff repeatedly communicated with ICE regarding the status of the removal decision.

On May 3, 2021, just two business days after the referral to ICE, USCIS staff wrote ICE, asking "[w]ill you please begin looking into this case as soon as possible." (Dkt. No. 38-1 at 4). Several weeks later, on May 27, 2021, USCIS counsel wrote ICE, stating "[j]ust checking in to see if a decision has been made in [Plaintiff's] case." (*Id*. at 12-13). The next day, May 28, 2021, USCIS counsel informed ICE that she needed a response prior to the June 21, 2021 deadline for filing her answer to Plaintiff's original complaint. (*Id.* at 11). On June 3, 2021, ICE initiated removal proceedings against Plaintiff, seeking his deportation from the United States based on the 2006 and 2007 convictions. (Dkt. No. 33-2 at 1-6). Plaintiff was soon thereafter arrested and then released on his own recognizance. (*Id*. at 13).

ICE's formal removal document noted that the removal proceedings were initiated by "USCIS Office of the Chief Counsel" referring the matter on April 30, 2021, following Plaintiff filing his civil lawsuit in the United States District Court in Charleston on April 19, 2021. The removal notice further documented that the initiation of removal proceedings against Plaintiff "would allow an immigration judge to review the case and make a determination on [Plaintiff's] removability" prior to the processing of his application for naturalization. (*Id*. at 4). ICE's removal notice was soon passed to USCIS counsel involved in this matter from a supervisor, observing that she "may be in need of this for a filing." (*Id*. at 13).

ICE's legal counsel soon determined that Plaintiff's record did not support removal

5

based on his prior convictions.[1] On August 13, 2021, USCIS litigation counsel was advised that ICE intended to dismiss the removal proceedings. USCIS counsel responded to this development by observing that "[i]f the immigration judge dismisses the case, that will very likely change the trajectory of this litigation . . ." (*Id*. at 23). A formal motion to dismiss the removal proceedings was filed by ICE's legal counsel on August 16, 2021, and the motion was signed by United States Immigration Judge Rodger Harris on August 18, 2021. (*Id*. at 17, 19).

At this point, USCIS staff had determined that Plaintiff was "approvable for naturalization" based on his application file and removal proceedings had been summarily dismissed by an immigration judge on the motion of ICE's legal counsel. Nonetheless, Defendant filed an answer to the amended complaint on September 22, 2021, maintaining the agency's position that Plaintiff was not entitled to naturalization. (Dkt. No. 19).

The parties to this action jointly moved on October 7, 2021 to dismiss this action with a remand to the agency to make a final decision on naturalization within 14 days. The Court was advised that the parties had reached an agreement that USCIS would not consider any derogatory evidence that predated the November 12, 2019 naturalization hearing. (Dkt. No. 22 at 1). Further, the Government agreed that "there was nothing in Plaintiff's alien registration file on the date of his interview, November 12, 2019, that precludes naturalization." (Dkt. No. 21 at 2). The terms of this settlement agreement were incorporated into an order of the Court and the matter was then remanded to the Defendant for a final determination of naturalization. (Dkt. Nos. 21, 22).

---

[1] Under federal law, a violation of a protective order can be the basis of removal only where a court determined that the alien had "engaged in conduct that violates the portion of a protection order that involves protection against threats of violence, repeated harassment, or bodily injury." 8 U.S.C. § 1227(a)(2)(E)(ii). ICE's legal counsel explained to USCIS counsel that the available record did not establish that Plaintiff's conviction met the statutory requirement. (Dkt. No. 38-1 at 18).

6

Plaintiff's application for naturalization was thereafter granted and he was sworn in as a United States citizen on November 8, 2021. (Dkt. No. 33-1 at 1).

Plaintiff thereafter filed a motion for an award of attorney fees under EAJA. (Dkt. No. 24). The Government opposed the motion, arguing that a remand to USCIS to make a naturalization decision under these circumstances did not make Plaintiff a "prevailing party" and the Government's position was "substantially justified." (Dkt. No. 30). Plaintiff asserts that he is a "prevailing party" under EAJA and that the Defendant's litigation position was not "substantially justified." (Dkt. No. 33).

## Discussion

A. <u>Prevailing Party</u>

A litigant is deemed a "prevailing party" under EAJA only where the court issues an order or decree that grants "some relief on the merits" and "materially alters the legal relationship between him and the defendant." *Ge*, 20 F.4th at 153. The Government argues this case is indistinguishable from *Ge* because the final decision on naturalization remained with USCIS. Plaintiff asserts that the settlement agreement reached in district court and incorporated into an order substantially altered the legal relationship between the parties and resolved a critical issue, whether Plaintiff's conduct prior to the November 2019 naturalization interview precluded a grant of citizenship.

The Court finds that Plaintiff did realize significant success on the merits in this litigation by having the Government concede as part of the settlement that nothing prior to the naturalization interview precluded naturalization. As Government counsel conceded in an internal email of August 13, 2021, the dismissal of the removal proceedings based on Plaintiff's 2006-2007 misdemeanor convictions changed "the trajectory of this litigation." (Dkt. No. 33-2 at 23). The

7

Court finds that Plaintiff was a prevailing party under EAJA as a result of the settlement agreement reached between the parties, which was then incorporated into the Court's order.

      B.      <u>Substantial justification</u>

The Government asserts that even if Plaintiff had been the prevailing party, he would not be eligible for a fee award under EAJA because the Government can carry its burden of showing that its litigation position was substantially justified. Plaintiff argues that Defendant, lacking a credible defense to Plaintiff's application of naturalization, undertook a strategy to defeat Plaintiff's civil action and application for naturalization by orchestrating removal proceedings by ICE against Plaintiff. He further argues that Defendant filed an answer to the amended complaint denying Plaintiff was entitled to relief even though such a position was at that point clearly without merit.

The full record in this matter amply demonstrates that an essential part of the USCIS defense was tied to its efforts to persuade ICE to undertake removal proceedings against Plaintiff after determining the agency's own records established that he was "approvable for naturalization." (Dkt. No. 35-1 at 4). Although Defendant asks this Court to reconsider its finding that "USCIS communicated with U.S. Immigration and Customs Enforcement ('ICE') only after Plaintiff filed his complaint," the record before the Court, including ICE's own internal documents, establish that the referral to ICE was made only after the filing of Plaintiff's suit and was initiated by USCIS' legal counsel's office. (Dkt. No. 33-2 at 4). After making the referral, USCIS staff made repeated inquiries to ICE about the status of the matter, at one point directly tying the need for a decision from ICE to the date Defendant was due to answer the original complaint in the case. (Dkt. No. 38-1 at 4, 11, 12-13). The Court finds these hardball litigation tactics troubling and plainly do not demonstrate substantial justification for the agency's litigation position.

The importance of the removal proceedings to the Defendant's defense strategy is clearly revealed in USCIS counsel's response when informed that ICE's legal counsel was dismissing the removal proceedings: "If the immigration judge dismisses the case, that will very likely change the trajectory of this litigation . . . ." (Dkt. No. 33-2 at 23). This was certainly true. By this point, Plaintiff's application file established he was "approvable for naturalization" and the USCIS counsel's "Hail Mary" effort to have Plaintiff deported though removal proceedings had failed. But this did not prevent Defendant from filing an answer to the amended complaint maintaining that Plaintiff was not entitled to relief. Taking the totality of circumstances into consideration, the Court finds that the Government has not met its burden to demonstrate that its litigation position was substantially justified.[2]

### C.     Fee Award

Plaintiff initially sought a fee award of $9,693.28 based on a rate under EAJA for $220.22 per hour for 42.5 hours of attorney time and $400.00 for Plaintiff's filing fee. (Dkt. Nos. 24-3, 33 at 9). The Court finds the hourly rate and fee request are reasonable and authorized under applicable law. *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978); Local Rule 54.02 (D.S.C.). The Government opposed any award under Plaintiff's FOIA claim, but Plaintiff's counsel has assured the Court no FOIA-related fee time has been requested. (Dkt. Nos. 30 at 15-16; 33 at 9).

---

[2] USCIS seeks to justify its continued insistence in its answer to the amended complaint that Plaintiff was not entitled to relief on the fact that in December 2020 a staff member was advised of some unstated "derogatory information" that was being investigated by ICE Homeland Security Investigations. (Dkt. No. 35-1 at 3). The possibility that an investigation might in the future produce evidence relevant to Plaintiff's eligibility for naturalization is a far cry from documented evidence necessary to deny an applicant naturalization and certainly did not support Defendant's litigation position asserted in the September 2021 amended answer. Indeed, USCIS staff admitted in an affidavit filed with this Court that it never had in its files "the evidence to prove the derogatory information." (*Id.* at 5). The possibility that USCIS might obtain in the future documentary evidence to contest naturalization does not constitute substantial justification for the defense in this action.

9

Plaintiff subsequently submitted a request for an additional award for time spent addressing the Defendant's motion to reconsider of 15.2 additional attorney hours at the same rate of $220.22 per hour. (Dkt. No. 38 at 9). The Court finds the hourly rate and fee request for this additional time are reasonable and authorized under applicable under law.

Consequently, the Court awards Plaintiff $12,706.69 for attorney fees under EAJA based on an hourly rate of $220.22 for 57.7 hours of attorney time plus $400.00 for Plaintiff's filing fee.

## Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's motion for reconsideration under Rule 60(b) (Dkt. No. 35) to the extent that the Court agrees to consider the additionally provided documents and to issue an amended order.  Further, the Court **GRANTS** Plaintiff's motion for an award of attorney fees and costs under EAJA (Dkt. No. 24) with an award of $12,706.69 in attorney fees and $400 in costs for reimbursement of the filing fee.

**AND IT IS SO ORDERED**.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

May 18, 2022
Charleston, South Carolina